IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Leon Stokes II,<br><br>　　　　　Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>　　　　　Respondents. | No. CV-15-0360-PHX-NVW (DKD)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE NEIL V. WAKE, UNITED STATES DISTRICT JUDGE:

　　　David Leon Stokes II filed a Petition for Writ of Habeas Corpus in this Court challenging his convictions and sentences. (Doc. 1) Respondents' answer did not assert any affirmative defenses and, despite the Court's invitation to file a supplemental answer, Respondents chose not to do so. (Docs. 9, 13) *See generally Wood v. Milyard*, 132 S.Ct. 1826, 1831-34 (2012). Stokes filed a supplemental reply. (Doc. 18) Although the Court concludes that Stokes timely filed his Habeas Petition in this Court, the Court finds that he is not eligible for relief on any of his claims and, therefore, recommends that his Petition be denied and dismissed with prejudice.

## BACKGROUND

　　　Stokes was indicted for various crimes stemming from a sexual assault. (Doc. 9, Ex. A) At trial, the victim testified that she was kidnapped, stabbed, and raped inside a minivan. (Doc. 20-1, Ex. AA at 68, 71-73) She could not identify her attacker. (Doc. 20-1, Ex. AA at 82) Stokes' DNA matched the rape kit taken from the victim. (Doc. 9-4,

Ex. EE at 86)  The jury heard testimony confirming that semen was found on the middle seat of the minivan but it was never tested.  (Doc. 9-4, Ex. EE at 17-21, 23-26, 52)  The jury also heard testimony that the only fingerprints recovered from the car were not a match to Stokes.  (Doc. 20-2, Ex. CC at 48-49)

Stokes testified in his own defense and claimed that it was possible he had sex with the victim in exchange for drugs the night before her assault. (Doc. 9, Ex. GG at 81-91)  In response to a question from his attorney, Stokes also testified that he had spent 15 years in prison between 1980 and 1998.  (Doc. 9, Ex. GG at 46)  The victim of an assault Stokes committed in 1980 also testified.  (Doc. 9, Ex. FF at 57-67)

On July 9, 2008, at the conclusion of a nine day trial, a jury in Maricopa County Superior Court found Stokes guilty of aggravated assault, sexual assault, kidnapping, and armed robbery.  (Doc. 9, Exs. C, D)  Stokes timely initiated his direct appeal and, after his counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), Stokes filed a supplemental brief.  (Doc. 9, Exs. E, F, G)  In his supplemental brief, Stokes raised several arguments including, as relevant here, that the prosecutor committed misconduct by (1) presenting a misleading argument, (2) presenting misleading testimony, (3) making an inference about his post-*Miranda* silence, and (4) withholding evidence. (Doc. 9, Ex. G at 23-25)  Stokes also argued that the trial court abused its discretion by allowing the jury to hear about his previous prison term.  (*Id*.)

The Arizona Court of Appeals affirmed his convictions and sentences in a memorandum decision issued on February 11, 2010. (Doc. 9, Ex. H)  Stokes requested and received extensions to file his petition for review.  (Doc. 18, Exs. A, B, C, D)  Stokes then timely filed a petition for review in the Arizona Supreme Court on May 5, 2010. (Doc. 9, Ex. I; Doc. 18, Ex. E)

After the Arizona Supreme Court denied his petition for review, Stokes moved for post-conviction DNA testing and also timely initiated post-conviction relief where, among other things, he argued that he was entitled to post-conviction DNA testing.  (Doc. 9, Exs. J, N, O, P, Q)  At the conclusion of briefing, the Maricopa County Superior Court

denied both motions. (Doc. 9, Ex. R)  Stokes timely petitioned the Arizona Court of Appeals to review the Superior Court's denial and, on May 7, 2013, the Court of Appeals granted review and denied relief. (Doc. 9, Exs. S, T at App. 1)  On July 1, 2013, Stokes then timely filed a petition for review in the Arizona Supreme Court. (Doc. 9, Ex. U; Doc. 18, Exs. F, G, H)

The Arizona Supreme Court denied his petition for review on November 26, 2013. (Doc 9, Ex. U)  Stokes had 90 days to petition the United States Supreme Court for certiorari. Sup. Ct. R. 13. He did not and so his judgement became final on February 24, 2014. The following day, his one year period of limitations for filing his Petition in this Court began to run.[1]  Stokes filed his Petition for Writ of Habeas Corpus in this Court in February 2015:  he signed the Petition on February 20 and he placed it in the prison mailing system on February 23. (Doc. 1)

### Stokes is not entitled to habeas relief.

**Timely Filed Petition.**  Respondents did not raise any affirmative defenses but also did not present a record to the Court that showed Stokes had timely filed his Habeas Petition. *See* Rule 5 of the Rules Governing Section 2254 Cases.  The Court requested, and received, additional information from Stokes and the Court is satisfied that Stokes' Habeas Petition in this Court is timely. (Docs. 13, 14, 16, 17, 18)

**Denial of DNA Testing.**  Stokes argues that the Superior Court abused its discretion when it denied his post-conviction request for DNA testing and, in so doing, violated his Fourteenth Amendment due process rights. (Doc. 1 at 7)  Respondents argue that this is not cognizable in habeas review because it is a question of state law and, despite Stokes' argument here, not a federal question. (Doc. 9 at 8-9)

---

[1] Between the Arizona Supreme Court's denial of his petition for review and the filing of his Petition in this Court, Stokes filed two motions in Maricopa County Superior Court. He first moved to correct a clerical mistake and the Court acquiesced. (Doc. 9, Exs. W, Y)  He then moved to dismiss his convictions and sentences under Arizona Rule of Criminal Procedure 8.2; the Court summarily denied his request. (Doc. 9, Exs. X, Z)

The Court notes that Stokes did not raise this issue as a question of federal law in the Superior Court or in the Arizona Court of Appeals. (Doc. 9, Exs. P, Q, S). Instead, he first raised this as a federal question before the Arizona Supreme Court when his Petition for Review argued that the Superior Court's "denial of the petitioner's request for post-verdict DNA testing violate[d] the petitioner's Fourteenth Amendment right to due process." (Doc. 9, Ex. T at 3). A state prisoner must properly exhaust all state court remedies before this Court can grant an application for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1), (c); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Arizona prisoners properly exhaust state remedies by fairly presenting claims to the Arizona Court of Appeals in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 843-45 (1999); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). To be fairly presented, a claim must include a statement of the operative facts and the specific federal legal theory. *Baldwin v. Reese*, 541 U.S. 27, 32-33 (2004); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Duncan*, 513 U.S. at 365-66. A defendant cannot "transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). Accordingly, Stokes' argument to the Arizona Supreme Court was not enough to raise a question of federal law for purposes of habeas review. As a result, this issue is not properly exhausted.

Moreover, the Court notes that Stokes requested post-conviction DNA testing under an Arizona statute and the Arizona courts reviewed his request under Arizona law. (Doc. 9, Exs. P, Q, R) On habeas review, this Court cannot "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Finally, even if he had raised this as a federal question earlier in his legal proceedings, it would be unavailing because there is no "freestanding [Constitutional] right" to post-conviction DNA testing. *Dist. Atty's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72-73 (2009).

For all of these reasons, Stokes is not entitled to habeas relief for this claim.

**Prosecutorial Misconduct: DNA Testing.** In a related argument, Stokes claims that the State withheld DNA evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 1 at 10) Specifically, he argues that its Notice of Discovery, stating that all physical evidence had been analyzed, was inaccurate because the semen from the minivan was never tested even though it could have been. (*Id.*) Stokes raised this argument as a federal question on direct appeal and so this argument is exhausted for purposes of habeas review. (Doc. 9, Ex. J at 30-32) As a result, the Court can only grant habeas relief if the petitioner has demonstrated prejudice from the adjudication of a claim that either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d). *Lambert v. Blodgett*, 393 F.3d 943, 970, n.16 (9th Cir. 2004); *Bains v. Cambra*, 204 F.3d 964, 977 (9th Cir. 2000).

On direct appeal, the Arizona Court of Appeals found no *Brady* violation because the State did not suppress, destroy, or fail to preserve evidence. (Doc. 9, Ex. H at ¶ 20) The Court of Appeals further noted that Stokes could have asked the State to test the evidence or could have requested an independent test of it but did neither. (*Id.*) Respondents argue that the Court of Appeals "reasonably concluded that there was no *Brady* violation." (Doc. 9 at 19)

At trial, the State acknowledged that this evidence should have been, but was not, tested. (Doc. 9, Ex. AA at 14-24) Thus, Stokes could reasonably argue that he could not have sought testing because he had no reason to suspect that it had not previously been done. However, based on the record before the Court, it appears that Stokes knew that the car seat had been preserved as evidence and so there was no violation of his *Brady* right to have his own expert test the seat. Indeed, Stokes' attorney may have made the valid tactical decision to not seek out a DNA test of the seat. Without any testing, his

attorney could, and did, argue that there was no physical evidence linking Stokes to the car and so the State had not met its burden of proof to establish Stokes' guilt. (Doc. 9, Ex. HH at 17, 20, 28)  Thus, the Court cannot say that the Court of Appeals' decision was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d)(2).

Moreover, the Court cannot say that this decision was contrary to clearly established federal law. 28 U.S.C § 2254(d)(1).  It appears that the only U.S. Supreme Court decision on this topic has involved post-conviction DNA testing. *Osborne*, 557 U.S. at 68-69.  Stokes is arguing that he had a *Brady* right to pre-trial DNA testing. This Court cannot find any clearly established federal law establishing such a *Brady* right and Stokes does not point to any.

Accordingly, Stokes is not entitled to habeas relief on this claim.

**Trial Court's Admission of Testimony.**  During the State's case in chief, the jury heard a stipulation that Stokes had been convicted of a felony in 1980 and also heard testimony from the victim of that assault. (Doc. 9, Ex. FF at 57-67)  During Stokes' direct examination, his attorney asked about his previous drug use. (Doc. 9, Ex. GG at 16)  At the end of his direct, the State asked the Court for a side bar which evolved into a lengthy oral argument outside the presence of the jury about whether this question about his drug use opened the door to cross-examination about Stokes' previous incarceration. (*Id*. at 26-44)  The Court ruled that Stokes' attorney could ask him "Isn't it true that you spent 15 years in prison between 1980 and 1998?" (*Id*. at 46)  There were no further questions about his incarceration.

Here, as before the Arizona Court of Appeals, Stokes argues that the trial court abused its discretion when admitting testimony about his prior criminal conviction and sentence. (Doc. 1 at 11; Doc. 9, Ex. G at 23; Doc. 9, Ex. H at ¶ 18)  Respondents argue that objections to testimony are questions of state law and, therefore, not properly before this Court.  The Court agrees.  Habeas review is not available for "questions of state evidence law." *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).  Thus, on

habeas review, the Court can only review whether the admission of the evidence means that Stokes "was denied his right to the fundamentally fair trial guaranteed by the due process clause." *Id*.

The Court has reviewed the entire trial transcript and cannot say that this question denied Stokes his due process right to a fundamentally fair trial. At the time of this question, the jury had already heard about his previous conviction. Moreover, to the ears of the jury, there was no overt link between questions about his drug use and the question about the length of his previous incarceration. Indeed, the jury had no information about whether the 15 years was continuous or when it started and ended. Because the Court cannot say that Stokes' was denied his right to a fundamentally fair trial, he is not entitled to habeas relief for this issue.

**Prosecutorial Misconduct: Closing Argument.** Stokes argues that three portions of the State's closing argument violated his Fifth Amendment due process rights. He argues that the State claimed that (1) he wiped down the car to get rid of fingerprints, (2) there was really good evidence in the car, and (3) the State impermissibly commented on his post-*Miranda* silence and inferred that he was lying. (Doc. 1 at 8-9)

Stokes raised these same arguments on direct appeal and the Arizona Court of Appeals found no violations. (Doc. 9, Exs. G, H) This argument is exhausted for purposes of habeas review. After a close review of the trial transcripts, the Court cannot say that it was either contrary to, or an unreasonable application of, clearly established federal law for the Arizona Court of Appeals to find no error with these three comments. On habeas review, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). This did not happen.

First, Stokes points to two comments the State made in closing about the absence of fingerprints in the car. These comments, read in context, were offered as the State's explanation for this absence:

> But he also had things with him, the defendant, to get rid of fingerprints. After all, he is covering his tracks. We know he's covering his tracks because is already spraying Windex and air freshener on [the victim's] vagina. <u>He had every opportunity to wipe that car down, and he probably did.</u> And then he vanished in that industrial area.
>
> . . .
>
> He knows they haven't confirmed the DNA testing because right at the beginning of that interview, they're swabbing his cheeks to get it. So he's thinking, this is a ruse. Again, <u>with the fingerprints in that van, he knows he wiped it down</u>, and he is just banking on the fact in [sic] the police are there to try to trick him into confession, and he won't do it.

(Doc. 9, Ex. HH at 8-9, 11) (emphasis shows Stokes' objections). These comments did not rise to the level of unfairness such that Stokes' due process rights were violated.

Next, Stokes argues that the State's closing argument implied that there was physical evidence linking him to the van. (Doc. 1 at 8) However, the State's argument at closing is that the victim's testimony is evidence linking him to the van:

> They also want to talk about how nothing was ever tested in that van. Really? One very important piece, probably the most important piece of evidence was tested in that van, and that was [the victim's] vagina. Because she was in that van. It's like those Russian dolls. We've all see [sic] them, right? You screw them off and there's another doll, and you take that one off and there's another doll. She was in that van. She was on the middle seat. That where she said the rape occurred. They went into her vagina, into her vaginal vault, and found the defendant's DNA, but they're still screaming no evidence that he was in the van. <u>That's really good evidence he was in the van</u>. That's really good evidence that he assaulted her in that van.

(Doc. 9, Ex. HH at 32) (emphasis shows Stokes' objections). This description of the victim's testimony was accurate and the Court cannot say that this statement violated Stokes' due process rights.

Finally, Stokes claims that the State's closing violated his rights by inferring that his post-*Miranda* silence indicated that he was lying and, therefore, guilty. (Doc. 1 at 8) The flaw in this argument is that there is no indication that Stokes ever invoked his

- 8 -

*Miranda* rights during his police interview. (Doc. 9, Ex. II) In a related argument, Stokes appears to be arguing that the State's closing should not have implied that he lied when he claimed he could have had sex for drugs with the victim the night before her assault. This is not a due process violation.

**IT IS THEREFORE RECOMMENDED** that David Leon Stokes II's Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **denied** because dismissal of the petition is justified by a plain procedural bar and jurists of reason would not find the ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

Dated this 12th day of April, 2016.

_____
David K. Duncan
United States Magistrate Judge